AO 91 (Rev. 11/11) Criminal Complaint — AUSA Sean Franzblau (312) 353-5305

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DERRICK MUHAMMAD; and
DERRICK MOORE

CASE NUMBER: 19 CR 190

MAGISTRATE JUDGE VALDEZ

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

From on or about March 18, 2018 to on or about March 21, 2018, at Harvey, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendants violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 371 | Conspiracy to commit an offense against the United States (Count One) |
| Title 18, United States Code, Section 1519 | did knowingly make a false entry in a record with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of any department or agency of the United States (Count Two) |

This criminal complaint is based upon these facts:

_X_ Continued on the attached sheet.

NIJIKA RUSTAGI
*Special Agent*
*Federal Bureau of Investigation*

Sworn to before me and signed in my presence.

Date: March 1, 2019

*Judge's signature*

City and state: Chicago, Illinois

MARIA VALDEZ, U.S. Magistrate Judge
*Printed name and Title*

FILED MAR 01 2019 THOMAS G. BRUTON CLERK, U.S. DISTRICT COURT

| UNITED STATES DISTRICT COURT | |
|---|---|
| NORTHERN DISTRICT OF ILLINOIS | ss |

## AFFIDAVIT

I, NIJIKA RUSTAGI, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed since approximately December 2017. My current responsibilities include the investigation of public corruption and obstruction of justice offenses. In connection with my official FBI duties, I have been involved in various types of electronic surveillance, the preparation and execution of search warrants, as well as in the debriefing of defendants, witnesses, informants and others who have knowledge of criminal activities. As part of my duties as an FBI Special Agent, I have become familiar with the means and methods of those engaged in corruption-related offenses.

2. I have been involved in the investigation of DERRICK MUHAMMAD and DERRICK MOORE concerning their involvement in violations of federal law, including violations of Title 18, United States Code, Sections 371 and 1519 (the "**Subject Offenses**").[1]

---

[1] 18 U.S.C. § 1519 provides: "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . , or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both." To prove a § 1519 violation, the government is not required to show that the defendant intended to obstruct a federal investigation; rather, the government must show only that the

3. This affidavit is submitted in support of a criminal complaint alleging that City of Harvey police officers DERRICK MUHAMMAD and DERRICK MOORE committed the **Subject Offenses**.

4. The information contained in this Affidavit is based on my participation in this investigation; my review of preliminary transcripts and summaries of court-authorized interceptions of wire communications and consensually recorded conversations; witness interviews; review of records obtained from various parties; discussions with other law enforcement agents with knowledge of this investigation; my training and experience; and the training and experience of other law enforcement officers with whom I have consulted. Since this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.

5. This affidavit includes summaries of court-authorized interceptions of communications and consensually recorded conversations, as well as my understanding of certain such conversations which are set forth in brackets. My understanding of these conversations is aided by the content and context of the conversations, my familiarity with the facts and circumstances of this investigation, my experience as a law enforcement officer, the experience of other law enforcement agents and officers in this investigation, my discussions with other law enforcement

---

defendant intended to obstruct the investigation of any matter that happens to fall within the federal government's jurisdiction.

3

officers, my discussions with confidential sources with relevant knowledge, and other evidence developed during the course of this investigation. The times listed for the intercepted and consensually recorded conversations are approximate. Further, summaries of the intercepted and consensually recorded conversations herein are based on draft—not final—transcripts and do not represent the entire conversation that occurred between the identified individuals.

I.   **Summary of Probable Cause**

6.   There is probable cause to believe that DERRICK MUHAMMAD and DERRICK MOORE conspired to falsify a record with the intent to impede and obstruct a matter within the jurisdiction of an agency of the United States, in violation of Title 18, United States Code, Section 371, and did knowingly make a false entry in a record with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of any department or agency of the United States, in violation of Title 18, United States Code, Section 1519.

7.   Specifically, on or about March 13, 2018, the Calumet City Police Department recovered a vehicle, which was subsequently towed by a private Harvey-based tow company (referred to herein as "Tow Company 1"), to a yard where Tow Company 1 impounded vehicles for the City of Harvey. Individual A had provided the vehicle to Individual B (Individual A's son), for Individual B's use.

8.   After the vehicle arrived at the yard, Individual C, the owner of Tow Company 1, alerted MUHAMMAD, a police officer with the City of Harvey Police Department, that a firearm had been found inside the vehicle. Individual C also

officers, my discussions with confidential sources with relevant knowledge, and other evidence developed during the course of this investigation. The times listed for the intercepted and consensually recorded conversations are approximate. Further, summaries of the intercepted and consensually recorded conversations herein are based on draft—not final—transcripts and do not represent the entire conversation that occurred between the identified individuals.

I.   **Summary of Probable Cause**

6.   There is probable cause to believe that DERRICK MUHAMMAD and DERRICK MOORE conspired to falsify a record with the intent to impede and obstruct a matter within the jurisdiction of an agency of the United States, in violation of Title 18, United States Code, Section 371, and did knowingly make a false entry in a record with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of any department or agency of the United States, in violation of Title 18, United States Code, Section 1519.

7.   Specifically, on or about March 13, 2018, the Calumet City Police Department recovered a vehicle, which was subsequently towed by a private Harvey-based tow company (referred to herein as "Tow Company 1"), to a yard where Tow Company 1 impounded vehicles for the City of Harvey. Individual A had provided the vehicle to Individual B (Individual A's son), for Individual B's use.

8.   After the vehicle arrived at the yard, Individual C, the owner of Tow Company 1, alerted MUHAMMAD, a police officer with the City of Harvey Police Department, that a firearm had been found inside the vehicle. Individual C also

alerted Individual A and Individual B to the discovery of the firearm. Prior to March 13, 2018, both Individual A and Individual B had been convicted of at least one felony offense, the firearm had traveled in interstate commerce, and had been reported stolen.

9. Thereafter, MUHAMMAD and another City of Harvey law enforcement officer, Detective DERRICK MOORE, conspired to conceal the recovery of the firearm from the vehicle, as well as Individual A's and B's connection to the recovered firearm. MOORE subsequently filed a false police report that stated the firearm had been recovered in the brush located near Tow Company 1's yard, as opposed to from within the vehicle associated with Individual A and Individual B.

## II. Facts Establishing Probable Cause

### A. Background

10. Based on interviews of witnesses with relevant knowledge, judicially authorized wire intercepts, consensual recordings, and my review of City of Harvey administrative records, I know that DERRICK MUHAMMAD is a Police Personnel Officer with the City of Harvey Police Department and DERRICK MOORE is a Detective with the City of Harvey Police Department.

11. Based on a review of criminal history records, I know that Individual A and Individual B (who are referenced further herein) are both convicted felons. Specifically, in or around 1991, Individual A was convicted of robbery in the Circuit Court of Cook County, and in or around 2004, Individual A was convicted of State

benefits fraud in the Circuit Court of Cook County.² In or around 2015, Individual B was convicted of possession of a stolen motor vehicle in the Circuit Court of Cook County.³

12. Title 18, United States Code, Section 922(g) makes it a federal felony for convicted felons to knowingly possess firearms that have traveled in interstate commerce. Title 18, United States Code, Section 922(j) makes it a federal felony offense for anyone to knowingly receive or possess a stolen firearm that has traveled in interstate commerce before or after it was stolen. A Federal department and federal agencies, including the Department of Justice and the Federal Bureau of Investigation, have jurisdiction to investigate and prosecute violations of Title 18, United States Code, Sections 922(g) and (j).

13. On or about February 28, 2018, Chief Judge Ruben Castillo of the United States District Court for the Northern District of Illinois entered orders authorizing the interception of wire communications over telephone numbers (XXX) XXX-1910 (MUHAMMAD phone) and (XXX) XXX-2929 (Individual A phone), used by

---

² Specifically, based on a review of Individual A's criminal history report obtained from the National Criminal Information Center (NCIC), in 2004, Individual A was convicted under 720 ILCS 5.0/17-6-A (State benefits fraud), which is a Class 3 or 4 felony offense depending on the loss amount (in Individual A's case, it was Class 3).

³ Specifically, based on a review of Individual B's criminal history report obtained from NCIC, in March 2015, Individual B was convicted under 625 ILCS 5.0/4-103 (receiving/possessing/selling stolen vehicles or stolen vehicle parts), a Class 2 felony offense.

MUHAMMAD[4] and Individual A,[5] respectively. On or about April 3, 2018, Acting Chief Judge Amy J. St. Eve entered an order authorizing the continued interception of wire communications over MUHAMMAD phone and Individual A phone.

### B. Recovery of the Firearm from the Vehicle.

14. On or about March 17, 2018, at approximately 11:43 a.m., Individual C placed an outgoing call on telephone number (XXX) XXX-9582 ("Individual C phone")[6]

---

[4] MUHAMMAD was identified as the user of MUHAMMAD phone in the intercepted phone calls set forth in this affidavit as follows: First, based on service provider records, MUHAMMAD phone was registered to the City of Harvey during all periods of interception set forth in this affidavit, and MUHAMMAD was a City of Harvey employee during the same period. Second, during the interception of MUHAMMAD phone, the user of the phone regularly referred to himself as "Muhammad," and was regularly addressed as "Rick" (which I believe is short for "Derrick") and "Muhammad." Third, during the investigation, at least two cooperating sources, including CS-3, have met with MUHAMMAD in person, and these meetings have been video and/or audio recorded. MUHAMMAD was identified in some of the video recordings based on a comparison of the video to a photograph of MUHAMMAD's Illinois driver's license. I have compared MUHAMMAD's voice in these recordings to the voice of the user of MUHAMMAD phone, and recognize the voices to be the same.

[5] Individual A was identified as the user of Individual A phone in the intercepted phone calls set forth in this affidavit as follows: First, according to service provider records, Individual A was the registered subscriber of Individual A phone during all periods of interception set forth in this affidavit. Second, during the interception of Individual A phone, the user of the phone regularly referred to himself as "[Individual A's last name]", and was regularly addressed as "[Individual A's last name]." Third, during the investigation, Individual A has been consensually recorded in several face-to-face conversations with cooperating sources. I have compared Individual A's voice on these recordings to the voice of the user of Individual A phone in several intercepted telephone calls, and recognize the voices to be the same.

[6] Individual C was identified as the user of Individual C phone in the intercepted calls set forth in this affidavit as follows: First, according to service provider records, Individual C was the registered subscriber of Individual C phone during all periods of interception set forth in this affidavit. Second, in multiple consensual and intercepted conversations involving Individual C phone, the user of the phone regularly referred to himself as "[Individual C's last name]", and was regularly addressed as "[Individual C's last name]." Third, throughout the investigation, a cooperating source has conducted multiple, in-person recorded conversations with Individual C, including video recorded conversations (in which Individual was identified based on a comparison between the video recording and a photograph from Individual C's Illinois

to MUHAMMAD phone, used by MUHAMMAD. During the call, MUHAMMAD and Individual C made plans to meet in person to discuss the recent towing of a vehicle that involved MOORE. Specifically, MUHAMMAD said, "I'm at City Hall [Individual C's first name redacted]. As soon as I leave here, I'll come by there." Individual C said, "Alright." MUHAMMAD said, "Who towed it?" Individual C said, "Who towed it? . . . Brother [last name of W&K Towing employee redacted] towed it to the sally port." MUHAMMAD said, "I mean, but, no, but . . . who was the officer?" Individual C said, "You know what, I think the detective was Moore . . . ." MUHAMMAD said, "Oooh shit . . . Okay, alright, I'll check it out, who got the tow slip on it." [MUHAMMAD would look further into the identity of the Harvey police officer involved in the towing of the vehicle by finding the "tow slip," which is a form filled out by Harvey police officers when they order vehicles towed.]

15. On or about March 18, 2018, at approximately 12:41 p.m., Individual A placed an outgoing call on Individual A phone to Individual C, who was using Individual C phone. During the call, Individual C asked to meet with Individual A. Specifically, Individual C said, "I got something I got to talk to you about. I can't talk to you on the phone. Very important." Individual A said, "I hear you, I'm coming by there . . . So, like 6 or 7 [p.m.], it ain't going to be too late is it?" Individual C said, "You got 5 minutes in between service?" Individual A said, "Yeah. Yeah, I do." Individual C said, "Please, alright, stop by."

---

driver's license); I have compared Individual C's voice from the recorded in-person meetings to the voice of the user of Individual C phone and recognize the voices to be the same.

8

16. On or about March 18, 2018, at approximately 1:46 p.m., Individual A received an incoming call on Individual A phone from Individual B, who was using telephone number XXX-XXX-2272 (Individual B phone).[7] During the call, Individuals A and B discussed the recovery of a gun from within a vehicle that Individual A had provided Individual B to use. Specifically, Individual B said, "Have you heard anything else about that car?" Individual A said, "No, I gotta go talk to the guy today. I don't know, some officers called me this morning, been calling, he said he can't talk ...." Individual B said, "Yeah, I ain't gonna lie, just found out something wrong with the car too that I ain't even know. So I was going to tell you anyway. Man, my little homie just called me. There was a pipe in that car. And I didn't even know there was a pipe in there. But I had dropped my little homie off at south suburban, he say he left it with me. He was going to get it when I left the restaurant that night." [Individual B told Individual A that Individual B's friend left a firearm ("pipe") in a vehicle associated with Individual B]. Individual A said, "Damn [Individual B's nickname redacted], I told [unintelligible]. I knew something was up. And I got dealer plates on that man. I told you, your little homie ain't supposed to be in the motherfucking car. God damn it. Now a good motherfucking car gone for nothing, on

---

[7] Individual B was identified as the user of Individual B phone in the intercepted conversations set forth in this affidavit as follows: First, Based on my review of Individual A's intercepted conversations over Individual A phone, I know that Individual A has a son named "[Individual B]," who goes by an abbreviated nickname; Second, Based on the content of the calls between Individual A and the user of Individual B phone, it is apparent that the user of Individual B phone goes by Individual B's nickname, and is Individual A's son. Third, based on a voice comparison, I believe that Individual B is the only individual to use Individual B phone in all intercepted calls set forth in this affidavit.

9

bullshit." Individual B said, "Naw, Mr. [Individual C's last name redacted], he just called me or whatever. He just said to have you call him or whatever. Ain't really said too much about nothing, cause I know I don't want nothing to coming back on you or whatever. And I really don't want nothing to come back on me, but, you know. I ain't say too much, but Mr. [Individual C's last name redacted] called me this morning too and he was like, 'Just have your dad call me. I'll talk to him,' or whatever. He was like, 'We gotta, uh, talk to Rick [DERRICK MUHAMMAD],' or whatever. And I'm like, 'Alright.' I'm like, he called me, so when I talked to him I just bring it up and let him know." Later in the conversation, Individual B confirmed that his reference to a "pipe" was to a firearm: "Yeah. That's what I'm talking about. A gun. I wasn't talking about no drugs or nothing." Individual A asked, "Why the fuck is a pistol in my car, [Individual B's nickname redacted]?" Individual B said, "Yeah, that's what I'm saying. I ain't really too much knew. I knew my little homie had it on him at first, but I ain't think he still had it on him when I dropped him off at school." Individual A said, "Why was he in my car? Why was he in my car? I told you that explicitly, nobody in my fucking but you and [name redacted]. Goddamn. I talk to you later man. Motherfucker."

17. On or about March 18, 2018, at approximately 2:29 p.m., MUHAMMAD received an incoming call on MUHAMMAD phone from Individual C, who was using Individual C phone. During the call, MUHAMMAD advised Individual C he was coming to Tow Company 1. Specifically, MUHAMMAD said, "[Individual C's first name redacted], me and my man comin' over there 'cause he's, he, he did the tow. But

10

he's tellin' me that's [Individual A's first name redacted]'s car." Individual C said, "Yeah man, that's why I was tryin' to keep it between us." MUHAMMAD said, "I'm, that's what I'm saying. That's why I said we gonna, we gonna put it down as recovered property and we, we, we gonna handle it. We know how to do it. So as soon as uh, uh, uh [unintelligible] call me back, we gonna, we gonna call you and then we'll put recovered property. That's all."

18. Based on (i) Individual A's request several hours earlier on March 18, 2018, to meet in person with MUHAMMAD, a City of Harvey police officer about something "very important" that could not be discussed over the telephone; (ii) Individual A's discussion with Individual B of the recovery of a firearm from a vehicle Individual A had provided to Individual B; (iii) MUHAMMAD's call to Individual C, wherein he announced his intention to "put it down as recovered property . . . That's all;" and (iv) the further evidence described herein, I believe that MUHAMMAD told Individual C that MUHAMMAD planned to have a false police report prepared regarding the recovery of the firearm to conceal its connection to Individual A and Individual B.

### C. MUHAMMAD Conspires with MOORE to File a False Police Report Concerning the Recovery of the Firearm.

19. On or about March 18, 2018, at approximately 3:10 p.m., MUHAMMAD placed an outgoing call on MUHAMMAD phone to MOORE, who was using telephone number XXX-XXX-1274 (MOORE phone).[8] During the call, MUHAMMAD and

---

[8] MOORE was identified as the user of MOORE phone in the intercepted conversations set forth in this affidavit as follows: First, service provider record list Derrick Moore

11

MOORE discussed retrieving the firearm from Tow Company 1, and MUHAMMAD stated they would find a way to make sure the firearm "ain't come back on nobody." Specifically, MUHAMMAD said, "What time you wanna do this?" MOORE said, "Uh, you wanna do this today?" MUHAMMAD said, "Well, you wanna do it today or wanna do it tomorrow? You tell me. I'm with you." MOORE said, "To-, tomor, tomorrow is great. Um . . .[unintelligible, talking over one another]." MUHAMMAD said, "'Cause we gonna, 'cause we gonna put like, uh, recovered. That's all we gonna do." [MUHAMMAD told MOORE they were going to generate a false report regarding the firearm recovered in the vehicle.] MOORE said, "Okay." MUHAMMAD said, "We ain't, we ain't gonna make it no, like, we ain't gonna make it no, no criminal investigation." MOORE said, "Mmmmk. Did you know [unintelligible, talking over one another]." MUHAMMAD said, "What's up?" MOORE said, "What'd he say what was goin' on." MUHAMMAD said, "He said he towed the car there and then when they, and then when he towed, when the tow driver looked in there and saw it [unintelligible, talking over one another]." MOORE said, "Saw it?" MUHAMMAD said, "So if they, so if they took it out, it's history. . . . They, they don't understand the police thing. But they, what the fuck? Why didn't you just call us when you saw it in there motherfucker?" MOORE said, "How you look in there and see it? How you look in there and see it with that tint? We saw, we was standin' up on that motherfucker

---

as the registered subscriber of MOORE phone. Second, as set out below, during this call, MUHAMMAD and the user of MOORE phone discussed making sure that the firearm recovered from the vehicle would not "come back on nobody." Days later, on or about March 26, 2018, MOORE filed a police report regarding the recovery of a firearm at or near Tow Company 1's yard.

and couldn't even see inside." [I believe MOORE had a hard time believing Individual C or Individual C's employee could have seen the firearm through the vehicle's tinted windows.] MUHAMMAD said, "Right, me and you gonna head over there and, and make a, make a way it ain't come back on nobody. Gonna get that banger though." [MUHAMMAD stated that he and MOORE were going to go recover the firearm at Tow Company 1's yard, and come up with a way to make sure the firearm possession would not be traceable to anyone ("come back on nobody"), which I understand to mean be used as evidence of a crime against anyone, including Individual A and Individual B.] MOORE said, "Yeah." MUHAMMAD said, "We gonna get that banger, but after that, that's, fuck them, but they . . . The fuck did you go in the car, you have a search warrant, bitch? You ain't no fuckin' police." Later in the same conversation, MOORE said, "And to call, I'm glad he called you and told you instead of callin' the station and saying some shit, cause any other time he call, you know what I'm saying? Called the station." MUHAMMAD said, "Oh no [unintelligible, talk over]. Gotta call me. No, no, don't deal in no shit like that."

20. The next day, on or about March 19, 2018, at approximately 9:04 a.m., MUHAMMAD received an incoming call on MUHAMMAD phone from MOORE, who was using MOORE phone. During the call, MUHAMMAD and MOORE discussed the circumstances surrounding the recovery of the firearm from the vehicle. Specifically, MUHAMMAD said, "No, I, I be around but I [unintelligible] go over there now and see what the fuck he [Individual C] talking about and see what, exactly what's going, what's happening, okay." MOORE said, "Yeah, cause hey, and find out

13

about that whoever he let his, you know, uh [Individual A's last name redacted], whatever the fuck, his son [Individual B] or somebody was driving that fucking car, and that's why they left it over there." MUHAMMAD said, "Oh, okay, okay. Where did you pick it up at, South Holland? [MUHAMMAD asked MOORE where the vehicle was initially recovered by the police]. MOORE said, "They picked it up in, over the lot over there, at um, where Sears use to be. What's that, River Oaks?" MUHAMMAD said, "Yeah, River Oaks." MOORE said, "Yeah, they picked it up over there and you can tell the door was locked because the girl would have found that gun, you know what I'm saying, the Cal City, and then when we got it here, it was locked, so they was on bullshit [unintelligible]." [I believe MOORE explained that the law enforcement officer(s) who recovered the vehicle did not know there was a gun inside, and were unable to see the gun within the locked car, as Individual C had suggested.]

21. Based on the preceding interception, federal law enforcement asked Officer A, a supervisory police officer with the Calumet City Police Department, to search Calumet City police records for any reports of stolen vehicles recovered in the area of the Sears department store located at River Oaks Center in Calumet City during March 2018. In response to this request, Officer A provided a Calumet City Police Department report documenting the recovery of a vehicle on March 13, 2018, at approximately 8:04 a.m. at 2 River Oaks Center in Calumet City, which is the site of a now closed Sears department store. The report reads as follows:

> On 13Mar18 at approximately 0800 hours I was on patrol in the area of 2 River Oaks CTR; Sears Auto when I observed a Silver Chrysler 300 unoccupied and parked in the east lot of said location. Because the vehicle was

14

parked in the lot of a location that had been out of business for several years I decided to investigate further.

I ran the plate that was affixed to the front and rear of the vehicle, Illinois Dealer Plate DL5955G, which came back clear to Chris Motorsports Inc. I then ran the VIN, which CCPD [Calumet City Police Department] dispatch advised came back on a silver 2005 Chrysler 300 that was stolen out of Harvey.

I advised CPPD dispatch that the vehicle was unoccupied, locked, no visible damages, and the plates on the vehicle at the time that it was reported stolen (IL Registration [X]8870) were not on the vehicle. CCPD dispatch sent a type 3 message to Harvey PD to confirm the status of the vehicle; Harvey PD relayed that the stolen status on the vehicle was valid, and they were sending an officer and tow truck to recover the vehicle.

Harvey [Police Officer B] arrived at the scene with their police tow and took possession of the vehicle along with the dealer plates that were on the vehicle.

Nothing further.

22. Officer A also provided investigating agents with an associated Calumet City Police Department incident log regarding contact with an individual (who I believe is Individual B) who reported to the Calumet City police department on March 13, 2018, at 10:16 a.m. that his vehicle had been stolen. The report documents that the individual was told that the vehicle had been recovered earlier that morning and turned over to the Harvey Police Department. The report, in pertinent part, states the following:

> 3/13/2018[,] 10:16:55 a.m. . . . Meet caller in the front lobby, he noticed his veh[icle] gone this morning, veh was ls [last seen] at 0300 hrs; keys are not with the veh . . . REC STOLEN [recovered as stolen] at Sears earlier in day . . 3/13/2018 10:46:30 Veh[icle] located at [S]ears; was

>recovered by Harvey PD . . . spoke w/ caller [believed to be INDIVIDUAL B], he advised his father [believed to be Individual A] purchased the vehicle at auction and has all paperwork. [C]aller and father will f/u [follow up] with [H]arvey.

23. Based on the reports obtained from the Calumet City Police Department, I believe the vehicle referred to in the intercepted wire communications between MUHAMMAD, MOORE, Individual A, and Individual B is a Silver Chrysler 300, bearing Illinois Dealer Plate DL5955G, that was recovered from the vicinity of the Sears department store on or about March 13, 2018.

24. Records obtained from the Illinois State Police Law Enforcement Agencies Data System ("LEADS"), which, among other things, tracks stolen vehicle reports, reflect that on March 13, 2018, at approximately 10:09 a.m., the Harvey police removed the vehicle referenced in the preceding paragraph from the LEADS database as a reportedly stolen vehicle. Based on my training and experience, this corroborates that the Harvey Police Department took custody of this vehicle on the morning of March 13, 2018.

25. On or about March 19, 2018, at approximately 1:58 p.m., Individual A placed an outgoing call on Individual A phone to Individual B, who was using Individual B phone. During the call, Individual A stated that the gun found in the vehicle was "fully fucking loaded," and told Individual B that Individual A was "not going to jail" for him. Specifically, Individual A said, "Okay, have you figured out what you want to do?" Individual B said, "As far as what?" Individual A said, "I just told you, [Individual B's nickname redacted], I'm not going to jail for you. So your

little homie, I don't know who the fuck this little homie is that got me all fucked up, but you know it's a year for every fucking bullet in that gun? What the fuck you need a gun for that you've got to put a mother fucking gun in my car? What the fuck are you living? What are you doing? I don't know, but I'm not going to . . . ." Individual B said, "Nothing, like I said, I ain't really have it in there, I was just droppin' him off at South Suburban and he really had just left it in there." Individual A said, "[Individual B's nickname redacted], he couldn't have left it in there without your knowledge and your permission, so stop running bullshit to me man. I'm trying to stay calm but you have no fucking idea. Fully fucking loaded. Every bullet is a motherfucking year. So, if you get out this way son, I hope you have your script together and let me know what you plan on doing, because whoever this little motherfucking homie is, either he going or you going. Cause I'm not lying for you and I'm damn sure not going to try and cover for him. Fucked up my money, I'm supposed to get paid today. Now I [unintelligible] my motherfucking money [unintelligible] you have no idea how fucking fucked up you got me. Thanks a lot, son."

26. On or about March 29, 2018, at approximately 5:12 p.m., Individual A placed an outgoing call on Individual A phone to Individual C, who was using Individual C phone. During the call, Individual C confirmed that he had discussed the recovery of the firearm with MUHAMMAD. Specifically, Individual A said, "Hey, before I talk to Rick [MUHAMMAD], had you talked to him when this first happened [unintelligible]?" Individual C said, "Oh yeah, yeah, yeah, Rick knows." Individual A said, "Okay, alright. Good enough, alright."

17

### D. Federal Law Enforcement Obtains a Copy of the False Report Filed by MOORE Concerning the Recovery of the Firearm.

27. On or about April 10, 2018, at approximately 7:37 p.m., Individual A placed an outgoing call on Individual A phone to Individual D, believed to be Individual A's sister, who was using telephone number (XXX) XXX-8858. During the call, Individual A told Individual D that the firearm recovered from the vehicle was an Uzi, and that, contrary to Individual B's prior statements to Individual A that the firearm belonged to Individual B's "little homie," in fact, Individual B had removed the firearm from Individual A's home, where Individual A had knowingly possessed the firearm before it was recovered in the vehicle. Specifically, Individual A advised that Individual A had permitted Individual B to "use a car . . . . [H]e supposed to go to work," and added thereafter, "[Unintelligible] found an Uzi in there, and it's a year for every bullet." Thereafter, Individual A said, "Yep, and it's the same one that I took from [unintelligible], so [Individual B's nickname redacted] stole it, took it back out of my house, cause I wasn't looking for it . . . ."

28. On or about April 24, 2018, federal law enforcement contacted the Harvey Police Department to inquire if any Uzi firearms had been recently recovered by Harvey police officers. Agents were told that only one such firearm had been recovered in the last several months, and were provided with the associated police report. The report was drafted by DERRICK MOORE, and stated that on or about March 21, 2018, MOORE recovered a .22 caliber, loaded, IWI black handgun, bearing serial number DR005366. Specifically, the report contained the following information:

> In summary: On 21 March 2018 (R/D) Reporting Detective Moore 961 while on patrol of the area of 148th Myrtle observed a metallic black object in the brush on the south west corner of 148th Myrtle. Upon R/D approach, R/D notes that the object is a black semi automatic handgun. R/D obtained information through a L.E.A.D.S. request that the weapon was stolen out of Lansing, Il, the date of the theft is 07 May 2016. R/D dropped the recovered weapon with serial number DR 005366 and loaded magazine, into evidence at the Harvey Police Department. R/D contacted Lansing Police Department in reference to the weapon.

The report does not mention the vehicle, Individual A, Individual B, or Individual C. The stated location of recovery, the brush on the southwest corner of "148th Myrtle," is along the perimeter of Tow Company 1's yard (the northeast corner of the yard extends to the southwest corner 148th Street and Myrtle Avenue).

29. On or about April 25, 2018, federal law enforcement recovered the firearm identified in MOORE's report from the Harvey Police Department. It is a black, .22 caliber, IWI Uzi pistol, bearing serial number DR005366. On or about April 30, 2018, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ran a trace report for this firearm, and the report reflects that the firearm was originally purchased at a Cabela's store in Hammond, Indiana, on March 5, 2013. Based on law enforcement records, on or about May 7, 2016, the firearm was reported stolen by its original owner to the Lansing, Illinois Police Department.

30. Based on the above, there is probable cause to believe that DERRICK MUHAMMAD and DERRICK MOORE conspired to falsify a record with the intent to impede and obstruct a matter within the jurisdiction of an agency of the United States, in violation of Title 18, United States Code, Section 371 (Count One), and did

knowingly make a false entry in a record with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of any department or agency of the United States, in violation of Title 18, United States Code, Section 1519 (Count Two).

FURTHER AFFIANT SAYETH NOT.

                                                                  Nijika Rustagi
                                                                  *Special Agent*
                                                                  *Federal Bureau of Investigation*

Subscribed and sworn
before me this 1st day of March, 2019

_____
Honorable MARIA VALDEZ
*United States Magistrate Judge*